## UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

In re:

ALEX PHONGSISATTANAK and
CHANHSAMONE PHONGSISATTANAK,

                              Debtors.

BKY No. 05-30201
Adv. No. 06-03373 (DDO)

CABERALLO, LLC.,

                              Appellant,

v.

ALEX PHONGSISATTANAK and
CHANHSAMONE PHONGSISATTANAK,

                              Appellees.

Civil No. 07-2071 (JRT)

**MEMORANDUM OPINION
AND ORDER AFFIRMING
THE BANKRPUTCY
COURT ORDER**

Kelly Vince Griffiths and Richard M. Carlson, **MORRIS LAW GROUP
P.A.**, 8300 Norman Center Drive, Suite 710, Bloomington, MN 55437, for
appellant.

Alan E. Brown, **LARKIN HOFFMAN DALY & LINDGREN LTD.**,
7900 Xerxes Avenue South, Suite 1500, Minneapolis, MN 55431-1194, for
respondents.

This matter is before the Court on Caberallo, LLC's appeal from a final order of

United States Bankruptcy Judge Dennis D. O'Brien, dated April 6, 2007.  *See* 28 U.S.C.

§ 158(a)(1).   For the reasons discussed below, the Court affirms the order of the bankruptcy court.

## BACKGROUND[1]

Respondent Alex Phongsisattanak emigrated to the United States from Laos in 1986.   From 1986 to 2004, respondent successfully established a small real estate investment business.   At one point, he and respondent Chanhsamone Phongsisattanak ("respondents") owned each of the following properties: (1) 1625 Fremont Avenue North, Minneapolis, Minnesota ("the Fremont Property"); (2) 6821 18th Avenue, Richfield, Minnesota ("the 18th Avenue Property"); (3) 2205 Chicago Avenue South, Minneapolis, Minnesota ("the Chicago Property"); and (4) 16188 Hominy Path, Lakeville, Minnesota ("the Hominy Property").   Respondents secured financing for the Hominy Property, their homestead, with a $270,000 mortgage ("Purchase Money Mortgage").

On May 12, 2003, respondents recorded a second mortgage on the Hominy Property.   This mortgage was given to Dennis Wager for $125,000 ("Wager Mortgage").   Also in 2003, a major fire occurred at the Fremont Property, prompting respondents to seek financing for reconstruction costs.   On June 30, 2003, respondents agreed to transfer title and ownership to all four of their properties to Blue Heron, Inc. ("Blue Heron") in exchange for Blue Heron's promise to, among other things, let respondents repurchase

---

[1] The parties submitted a joint statement of undisputed facts to the bankruptcy court. Appendix, at A-27-28.  The factual background below is based on that statement and on the findings of the bankruptcy court.

the properties under a contract for deed for $950,000 ("Blue Heron Contract").  Blue Heron subsequently gave Sterling Equity & Investment, Inc. ("Sterling") the third mortgage on the Hominy Property ("Sterling Mortgage"), and this $105,000 mortgage was recorded on January 14, 2004.

The Blue Heron Contract and Blue Heron's interest in the four properties were later assigned to appellant Caberallo, LLC ("Caberallo").  After respondents failed to make required monthly payments, appellant began cancellation proceedings.  Respondents contended that the contract for deed was subject to foreclosure, not cancellation, because it constituted an equitable mortgage.  Following negotiations, the parties entered into a written agreement on May 14, 2004 ("May 14 Agreement").

Under the May 14 Agreement, the respondents were to, in effect, surrender the Fremont Property, the 18th Avenue Property, and the Chicago Property to appellant, and get back the Hominy Property.  The provision of the agreement relating to the Hominy Property, "Paragraph Four," reads as follows: "At such time as [respondents are] able to convey marketable title to [the Chicago Property] to [appellant], [appellant] will deliver marketable title to [the Hominy Property] to [respondents]."  Appellant's Appendix, at A-67.  There is no dispute that respondents satisfied their obligation under Paragraph Four by conveying marketable title to the Chicago Property.  The parties dispute,

however, whether appellant satisfied its obligation under Paragraph Four, and on July 25, 2006, plaintiff filed suit in the bankruptcy court.[2]

The parties now agree that when the Hominy Property was conveyed to the respondents, they intended for respondents to take title subject to the original Purchase Money Mortgage. The parties dispute, however, who was intended to be responsible for the Wager Mortgage and the Sterling Mortgage. Appellant argues that it agreed to transfer the Hominy Property subject to any encumbrances originating from the respondents – including the Wager Mortgage – and also subject to a recalculated Sterling Mortgage.[3] Appellant contends that the failure to include these terms in Paragraph Four was due to a mutual mistake. Respondents disagree, contending that the agreement was for them to take title to the Hominy Property subject only to the Purchase Money Mortgage. Respondents contend it was appellant's responsibility to clear the Wager Mortgage and the Sterling Mortgage.

The bankruptcy court denied both parties' motions for summary judgment. The court concluded there was "an issue of material fact regarding the parties' intentions with respect to paragraph 4 of the agreement, and whether the unambiguous language is a scrivner's error, which would produce a result contrary to their mutual understanding and

---

[2] This matter began in the bankruptcy court after the holder of the Purchase Money Mortgage on the Hominy Property began foreclosure proceedings. Respondents filed for bankruptcy relief on January 13, 2005.

[3] As explained further below, appellant argues that the Sterling Mortgage was to pass to respondents after having been recalculated in light of proceeds from the sale of the Fremont Property, the 18th Avenue Property, and the Chicago Property.

agreement, thus justifying reformation of their written agreement under the doctrine of 'mutual mistake.'"   The bankruptcy court then conducted a brief bench trial, hearing testimony from respondent Alex Phongsisattanak, respondent's attorney during the relevant contract negotiations, William Ford, and appellant's two co-owners, Jason Heroux and John Ludwig.   The court issued a written order of judgment finding that Paragraph Four did not contain a mutual mistake as to the Wager Mortgage or the Sterling Mortgage, and that respondents were entitled to judgment against appellant for its failure to deliver marketable title to the Hominy Property.   This appeal followed.

## ANALYSIS

## I.   STANDARD OF REVIEW

In bankruptcy proceedings, the district court sits as an appellate court and applies the same standard of review as the court of appeals.   *In re Reynolds*, 425 F.3d 526, 531 (8th Cir. 2005).   This Court reviews the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*.   *Id*.   "A finding is clearly erroneous when although there is evidence to support it[,] the reviewing court is left with the definite and firm conviction that a mistake has been committed."   *DeBold v. Case*, 452 F.3d 756, 761 (8th Cir. 2006).   Moreover, in considering findings of fact, "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses."   Fed. R. Bankr. P. 8013.

## II.     MUTUAL MISTAKE

"Where the words of a written contract are plain and unambiguous, its meaning should be determined in accordance with its plainly expressed intent." *Carl Bolander & Sons, Inc. v. United Stockyards Corp.*, 215 N.W.2d 473, 476 (Minn. 1974).   Here, Paragraph Four of the May 14 Agreement states that appellant "will deliver *marketable title* to [the Hominy Property]" to respondents.  (Emphasis added).  The bankruptcy court concluded that this "unambiguous" language "requires the defendant to deliver title to [the Hominy Property] free and clear of all mortgages."  The parties do not dispute this interpretation.  *See McClelland v. DeWulf*, No. 99-1604, 2000 WL 557929, at *5 (Minn. Ct. App. May 9, 2000) (noting that marketable title had not been delivered where the property was encumbered by a mortgage); Williston on Contracts § 50.10 ("A marketable title is one which is free from liens or encumbrances[.]").  Appellant argues, however, that Paragraph Four should be reformed under the doctrine of "mutual mistake," to reflect the parties' intention that respondents be responsible for the both the Wager Mortgage and the recalculated Sterling Mortgage.

Under Minnesota law, a written contract may be reformed where "(1) there was a valid agreement between the parties expressing their real intentions; (2) the written instrument failed to express the real intentions of the parties; and (3) this failure was due to a mutual mistake of the parties, or a unilateral mistake accompanied by fraud or inequitable conduct by the other party." *Nichols v. Shelard Nat'l Bank*, 294 N.W.2d 730, 734 (Minn. 1980).  "These facts must be established by evidence which is clear and consistent, unequivocal and convincing." *Id.*  Following trial – and an opportunity to

observe the testimony and demeanor of the witnesses – the bankruptcy court found that appellant failed to meet this burden as to either mortgage.[4]

Appellant offers several brief assertions in support of reversing those findings. Appellant contends that both parties believed the Wager Mortgage had been satisfied, and that although the parties used the words "marketable title," they meant to exclude encumbrances "caused" by respondents (i.e. the Wager Mortgage). Those encumbrances, appellant argues, were intended to pass with the title to the Hominy Property. Appellant argues that this is demonstrated by the fact that it conveyed its interest in this property in a limited warranty deed,[5] as well as by the testimony of its co-owners. Appellant adds that in reforming the contract to account for the Wager Mortgage, the Court should place responsibility on respondents, because they were in the best position to know whether it had been satisfied. As to the Sterling Mortgage, appellant contends that the parties' intent is also demonstrated by the testimony of its co-owners and the limited warranty deed, as well as by a letter sent by respondents' attorney in advance of the May 14 Agreement.[6]

---

[4] The bankruptcy judge did not specifically identify which of the three *Nichols* factors appellant failed to satisfy. However, this Court interprets that court's analysis as a finding that appellant failed to demonstrate a valid agreement other than the agreement expressed in the parties' written contract.

[5] This deed did not warrant that the Wager Mortgage and Sterling Mortgage had been cleared.

[6] Appellant argues that these materials collectively demonstrate the parties' intention to recalculate the Sterling Mortgage as follows: "the intent of the parties was to adjust the Sterling Mortgage to account for the actual proceeds from [appellant's] sale of [the Fremont Property], [the 18th Avenue Property], and [the Chicago Property]. If there was a surplus the [respondents]

(Footnote continued on next page.)

Respondents disagree, arguing that the parties' agreement was accurately expressed in their written contract. Respondents argue that there is no documentary evidence supporting appellant's position, and that the self-interested trial testimony of appellant's agents was contradicted at trial. Finally, respondents argue that their only agreement about taking on a recalculated Sterling Mortgage was captured by the text of the May 14 Agreement. Paragraph five of that agreement discusses recalculating that mortgage "[i]n the event [respondents are] unable to convey marketable to [the Chicago Property]." Appellant does not dispute that respondents conveyed marketable title to the Chicago Property.

After a careful review of the record, including the transcript of the bench trial, the Court agrees that the bankruptcy court made no clearly erroneous factual findings, and properly applied the controlling law. As to the Wager Mortgage, it is first worth noting that appellant alleges precisely the sort of mistake that Minnesota intended to eliminate with its recording statutes. *See Manderfeld v. Krovitz*, 539 N.W.2d 802, 806 (Minn. Ct. App. 1995). The Wager Mortgage was indisputably recorded on May 12, 2003, more than one year before the relevant agreement. This provided constructive notice of the Wager Mortgage under Minnesota law. *See* Minn. Stat. § 507.32; *cf. Anderson v. Graham Inv. Co.*, 263 N.W.2d 382, 384 (Minn. 1978) ("Constructive notice is a creature of statute and, as a matter of law, imputes to all purchasers of any properly recorded

---

(Footnote continued.)

were to obtain additional monies. If there was deficit [appellant] was entitled to transfer the Hominy Property to the [respondents] subject to the Sterling Mortgage in the amount of the deficit." Reply Brief at 4.

instrument even though the purchaser has no actual notice of the record."). Such notice

typically precludes actions based on mistakes about recorded interests. *See Manderfield*,

539 N.W.2d at 806 (refusing to reform a contract for mutual mistake where the relevant

information had been recorded); *Farmers State Bank of Delavan v. Jenkins*, 403 N.W.2d

861, 865 (Minn. Ct. App. 1987). Appellant contends that it did not discover this

mortgage when it performed a title search on July 29, 2003, in conjunction with the

Sterling Mortgage,[7] because there is a "gap" between when a mortgage is recorded and

when it is included in the county's records. However, appellant evidently did not

perform a title search in conjunction with the May 14 Agreement, a step which would

have corrected its mistaken views about the status of the Hominy Property. *Cf. Norwest

Bank Minn., N.A. v. Verex Assurance, Inc.*, No. 95-2292, 1996 WL 363371, at *3 (Minn.

Ct. App. July 2, 1996) (declining to find a mutual mistake where the defendant was in a

position to investigate its mistaken view and failed to do so). In any event, appellant's

argument fails for the reasons given below.

Appellant was required to demonstrate that the parties reached a valid agreement

other than the agreement expressed in their written contract. *See Nichols*, 294 N.W.2d at

734.[8] While the record is not without ambiguity, appellant has not met this burden with

---

[7] Appellant's co-owner, Jason Heroux, was involved in this transaction because he is also the sole shareholder of Sterling.

[8] Appellant also briefly asserts that respondents actually knew about the Wager Mortgage and failed to disclose it, fraudulently inducing a *unilateral* mistake on the part of appellant. The only theory that was tried before the bankruptcy court, however, was the mutual mistake theory addressed above. In fact, the Bankruptcy Judge interrupted appellant's closing argument in order

(Footnote continued on next page.)

"clear and consistent, unequivocal and convincing" evidence.  *Id*.  Appellant points to the fact that it conveyed the Hominy Property by limited warranty deed, arguing that this was consistent with the parties' agreement.  However, the limitations of this conveyance are the reason that appellant was sued.  The fact that appellant did not comply with respondents' understanding of the contract does not prove that appellant's interpretation was correct.  As to the trial testimony, it appears that all parties indeed believed that the Wager Mortgage had been satisfied.  However, there is nothing in the record indicating that the parties ever discussed this assumption, and also nothing showing that the parties agreed for respondents to assume this mortgage if their assumption turned out to be mistaken.  Such an agreement would have been a complete reversal of the "marketable title" language in the written contract, which placed that risk on the appellant.  This also would have been inconsistent with the testimony of William Ford, who testified that the parties intended the Hominy Property to pass to respondents "free and clear – or free and clear except for the [purchase money] mortgage."  While Ford was not a neutral party, this Court gives "due regard" to the bankruptcy court's opportunity to weigh the

---

(Footnote continued.)

to confirm this.  Trial Transcript at 89-90.  The unilateral mistake theory will not be considered for the first time on appeal.  *See In re Stanton*, No. 07-670, 2007 WL 2538431, at *4 (S.D. Tex. Aug. 31, 2007) ("It is well established that we do not consider arguments or claims not presented to the bankruptcy court.").  The Court notes, however, that a fraud theory would have been particularly difficult to sustain in light of the fact that the Wager Mortgage was publicly recorded.

credibility of the witnesses. *See* Fed. R. Bankr. P. 8013.[9]  In sum, the bankruptcy court did not clearly err in finding that appellant failed to prove a valid, unintegrated agreement concerning the Wager Mortgage.

As to the Sterling Mortgage, the fact that appellant conveyed the Hominy Property by limited warranty deed is inconclusive here as well, for the reason given above. Appellant also points to a letter sent by respondents' attorney on May 11, 2004. This letter generally alludes to a recalculation of a mortgage on the Hominy Property, and appellant is correct that it does so in broader terms than those included in the final agreement.[10]  But the only evidence about whether the letter actually became a part of the parties' final agreement is their respective, conflicting testimony. The combination of the letter and the final agreement are consistent both with appellant's allegations of mutual mistake *and* with the notion that the terms of the agreement were narrowed when the contract was actually drafted.  After observing the demeanor of those witnesses and weighing their credibility, the bankruptcy court found in favor of the respondents on this question, and this Court sees no basis for concluding that this finding was clearly erroneous. *See* Fed. R. Bankr. P. 8013.

---

[9] In discussing the Wager Mortgage, appellant also briefly alluded to a loan given to Blue Heron and respondents by Sterling, in conjunction with the sale/buy-back transaction. Appellant suggests that it believed respondents had used this money to pay off the Wager Mortgage. Appellant has not pointed to any evidence, however, demonstrating that this was the purpose of Sterling's loan.  Moreover, assertions about appellant's own views do not amount to "unequivocal" evidence that a valid agreement was reached between the parties.

[10] The final agreement calls for a recalculation only "[i]n the event [respondents are] unable to convey marketable title to [the Chicago Property]."  As noted above, appellant does not dispute that respondents satisfied this condition.

In conclusion, the parties entered into a written contract that unambiguously required appellant to clear both the Wager Mortgage and the Sterling Mortgage before delivering title to the Hominy Property.  The bankruptcy court did not clearly err in determining that appellant failed to prove – by "clear and consistent, unequivocal and convincing" evidence – that the parties reached a valid agreement that differs from their written contract.  The order of the bankruptcy court is affirmed.

## ORDER

Based on the foregoing records, files, and proceedings herein, the Court **AFFIRMS** the Order for Judgment of the Bankruptcy Court in full.


DATED:    March 31, 2008                   _____s/ John R. Tunheim_____
at Minneapolis, Minnesota.                    JOHN R. TUNHEIM
                                             United States District Judge